I mean, it's not germane to this position, I was just trying to fit it into my scheme in a lot of places in Texas like that. Thank you. Didn't mean to ask you a question out of sight of other councils, so hopefully it's not on there. All righty. Mr. Arbonne. Good morning, if you'll please the court. This is an appeal from a summary judgment granted by Judge Brady in favor of the defendant appellate on the basis of prescription. The issue that we feel needs to be determined in this case is whether the defendant appellate has established there is no general issue of material fact as to when Carol Peterson knew or should have known she had a cause of action for injuries caused by a barred IVC filter. In addressing the issue of prescription, the Supreme Court of Louisiana has long held that under Louisiana jurisprudence, prescriptive statutes are to be strictly construed against prescription and in favor of the obligations sought to be established. Louisiana Supreme Court holds if there are two possible constructions, that which favors maintaining as opposed to barring an action, that construction should be adopted. Under the exception prescription known as contra non-valentis, don't look at me, they're the Louisianans. I understand. Thank you, Judge. Thank you. It can be applied to prevent the running of the one-year prescription where the cause of action is not known or reasonably knowable by the plaintiff. All right. But, okay. But, you know, how do we get there? I mean, it's just on the chronology in terms of, you know, date of discharge, et cetera, the conversations or other information given by the doctors, et cetera, et cetera. I mean, let's just start there. Start there. Very simply, Your Honor. I guess I'm saying how do we get to contra non-valentis? I was just going to explain that and, Judge, I would tell you this is how. This case is about a device called an IVC filter. An IVC filter is a device that is implanted in the body. The IVC filters in question are called optional or known to be optional filters in that they can be implanted and removed or, by intention, they can be implanted and removed or they can be implanted and left permanently in the body. In 2008, Ms. Peterson was implanted with a Bar G2 IVC filter. In 2012, she goes to the emergency department with complaints of flank pain. While there, a CT scan is performed that indicates there may be an issue with the filter perforating through the wall of her vena cava. These devices kind of look like an umbrella without the cover, and those struts can perforate. From the ER, she is put into the hospital for evaluation of removal, according to the records, whether the device could be removed. In the course of that, the doctors are consulted, a venogram is done, and there is confirmation of perforation, but the question becomes was she told of the confirmation of that perforation. This is where, Judge, I would say that we get to the concept of contra non-valentis in that being an internal device, something she can't see, touch, or feel, she's reliant upon communication from the doctors to understand if she even has an injury. Now let me preface this, Judge, just by saying knowledge of the injury alone doesn't carry the day for the defendants. It is more than knowledge of an injury. What was the injury? The injury is that it did perforate her vena cava. She has struts sticking out through the walls of her veins. Well, how can she not know that the device caused the injury? Well, there's two options. Unless the doctor specifically told her there was perforation, which she denies, prior to her discharge, she wouldn't know that it was perforated. So all she... Okay. And secondly, Judge, we've got to start with this term IVC filter. IVC filter is more or less a generic term for a number of devices made by various manufacturers that perform this function. There are IVC filters manufactured by Cook Medical. There are IVC filters manufactured by the Braun Company. There are IVC filters manufactured by Boston Scientific. There are IVC filters manufactured by Bard. And the problem here is that my client had no idea what device she had until she obtained her medical records after she'd been informed of a problem with the filter. There's dispute in the evidence as to when she was informed of a problem with the filter. My client's testimony is she was not told until she had a follow-up visit following her hospitalization with her doctors. And that's when she learned she had perforated. The doctors... The medical records indicate that the doctors had determined the perforation during her hospitalization at the end of July of 2012, 26 to the 31st. This case was filed within 14 days, a year and 14 days of her discharge. Let me ask you precisely. She doesn't deny that they told her in the hospital or at discharge that this IVC filter didn't work, right? She just said... She does deny it. She denies it? Or she says she had no memory? She actually... You're right. She denies it. And where is that in the record? In my brief, it's on page 12. I'm sorry. I have to take my glasses off. But in the record, if we start with 1714, which is page 94 of her deposition, do you have any discussions with the doctors in the emergency room about the results of your CT scan or the reason for your being admitted to the hospital? She says no. And then on the record 1715, by the time you were discharged from the hospital on July 31st, were you aware that as this medical record states, your doctors had come to the conclusion that the workup suggested a complication from your IVC filter? Her answer? When I was discharged from the hospital, no. Well, why did Judge Brady misunderstand that? Your Honor, and that is part of my basis for my appeal, is I believe for some reason Judge Brady was not giving the plaintiff the benefit of all reasonable inferences and that he accepted the argument of defense counsel that this was all about a failure of recollection. Defense counsel has defended many of these IVC cases. The testimony they rely upon is testimony that was gained by defense barge counsel who asked the question in terms of, you do not recall or do you recall? I guess the problem is sort of a common sense one. The lady goes in there. She knows this device is in her leg. How can she think it's something else? She had flank pain before and the doctors never correlated it to her IVC filter. She did not know why she had flank pain when she went into the hospital in July. Now, when you say flank, do you mean flank of the leg or you're pointing it out? The IVC filter is not in the leg, Judge. It's in the IVC. It was either placed through the femoral vein or the jugular, but it was actually positioned up here high in the chest, above the kidneys, just below the renal junction of the kidneys. So it's higher up in the chest. If the court accepts as reasonable her testimony that it was not until these follow-up visits two weeks later that she was informed of perforation, a genuine issue exists as to whether or not she even knew of an injury. But again, that's not the be-all and end-all of the test. She could know of the injury. We could, and I don't, I'm not admitting, but I would accept for argument's sake that she could have known of a perforation on July 31st, but that doesn't start the prescription period running. Under the law, the prescription period doesn't run, mere knowledge of injury is insufficient to start the prescriptive period. Prescription period does not begin to run until the plaintiff has a reasonable basis to pursue a claim against a specific defendant. That's the case, that is the, that opinion that I'm citing is bodied by Cook, which is a district court opinion, but it's citing the Chevron case, Chevron versus USA, which is a Fifth Circuit opinion. It's not enough to know you have an injury. This is the specific defendant exception, which works in tandem with the discovery rule. The Louisiana jurisprudence does not impose upon the, a person, in fact, the quote I would use is, prescription should not be used to force a person who believes she may have been damaged in some way to rush to file against all parties who might have caused the damage. Judges, if you look in the record, and specifically if you were to look at, there's a record cited by the defendant, I'm missing my page number, but there's a record from Dr. Eitel from 2010. It's the only document or record you have in front of your medical record that attempts to identify what filter she has. And it says she has a Greenfield filter. So on, on, in July of 2012 when she was discharged, what's the allegation of the extent of her knowledge at that point? Just that she had a perforation? That would be the extent of the knowledge even the defendants are saying she had at that point. No evidence. The defendants have offered no evidence to know that she knew she had a barred IVC filter at that time. The only evidence in the record is that after she obtained her medical records, sometime in 2012 is when she first learned it was a barred filter. So when she was discharged, well let me ask her, when she was discharged, what did she know? She knew she had a, when she was discharged, she knew that they were not going to remove the filter. They were going to follow conservative care and not remove the filter. So she had to know it was a filter. Well she knows it is a filter. Correct. And that her care in the hospital is related to her filter. Right. Her testimony is she didn't know it was perforated or turned. It's the specific testimony. So she doesn't know there was a specific injury. And then, if you look at the discharge record that the defendants have cited, and allege that it states she was informed of the nature of her injury, consulted on her care, all the discharge summary says is that she was consulted on the care. That she agreed to a conservative course of treatment. But again, Your Honor, as I point out, even if the court were to accept she knew she had a perforation at that time, that doesn't start the prescriptive period running. Well, you know, I mean that's why you have a prescriptive period of one year, because if you know that it's a device implanted inside you, you have a whole year to find out who the defendant or defendants should be. And she used that year as best she could to learn the identity of her defendant, Your Honor. Well, she did. The only question is whether she took a year and two weeks. But, Your Honor, that's just the point. The statute doesn't run from the time of injury. You're saying she didn't know it was a barred filter even two weeks later, right? Or longer. Right. But that's a key element as to when the prescription period starts under both the Chevron opinion and the Jordan opinion by the Louisiana Supreme Court. You have to know you have a cause of action, not just an injury that might be related to something. You have to know you have a cause of action against a specific defendant. The bar brief tries to spin that into, you have to know you have an injury. When did she have the requisite knowledge you say she would need to have? And how did it come about that she then had that knowledge? According to her testimony on August 14th, and there's a record, there's a medical record to support this, she had a follow-up visit after her hospitalization with Dr. Eitel and Dr. DeCourt. There's a record from Dr. Eitel from that date that says he explained, or it says that she was there because of the filter and that there was an extruding leg. My client doesn't deny that she was told that there was perforation on that date. But that's August 14th of 2012, a day before the suit was filed. In addition to that, Your Honor, is the testimony that she did not know she had a barn filter until she was able to obtain medical records identifying the name of the actual manufacturer of the IVC filter that caused her injury. So the August 14th, that's the date that the medical results were reported to her? According to her testimony, yes, Your Honor. Okay, help me out with that. I mean, what's the scenario for that? I mean, she's what? She's at the doctor? She's back at the hospital? No, she went for a follow-up visit post her... So since discharge, July of 2012, she's had a series of post-discharge appointments? That's the first one. That's the post-discharge visit. Alright, so in that post, that's with whom? Dr. Eitel and Dr. DeCourt, in her testimony, it is at that time that she had specific detailed information that her filter had perforated, and as she says, turned or tilted. Is there any argument that she was not making reasonable efforts to discover the manufacturer? There's no argument made in the brief to that extent, Your Honor. In fact, the defendants posed their issues in their brief. You look at just the issues. They posed the issue as whether or not she knew she had a claim against the barred IVC filter. But then their argument simply refers to generic, the IVC filter, an IVC filter. I'd point out again, Judge, the only medical record that you have before you that identifies a type of filter is from Dr. Eitel in 2010, and he says it's a greenfield. Well, suppose you get run over by a car, or let's say your car malfunctions and has an accident, and it's because of some fuel filter in the car, but you don't know who manufactured the fuel filter, and you don't find out exactly what the cause is until two weeks later at the mechanic's store. Are you saying that prescription doesn't even run until you know which of eight or ten manufacturers of this filter knew, that you knew which among eight or ten manufacturers of the filter was the one that was in your car? Yes, Your Honor. I'm not saying that. I'm saying that the Supreme Court of Louisiana says that, and that this court in Chevron said that. Well, I mean, I don't know if that's Louisiana law. Chevron was citing Louisiana law. In fact, they cited to the Jordan case, which is the Supreme Court opinion I'm citing. Your Honor, that's just it. Prescription should not be used to force a person who believes she may have been damaged in some way to rush to file claims against parties, all parties, who might have caused her damage. Defendants say that only applies where there's a variety of injury, or potential different causes of injury. Your Honor, I don't believe that that under the Louisiana treatment of prescription, where prescription is narrowly construed and is construed against ruling against the cause of action and in favor of a reasonable interpretation. When the Supreme Court says you have to have a reasonable basis to pursue a specific defendant, the case the court cites is exactly what I would reference, Judge, is that you need to know who the defendant is you're suing. You don't have an obligation to sue every defendant. And I'm sure Bard wouldn't want to be sued every time somebody had a, quote, filter incident if it wasn't their filter. Thank you, Judges. We believe this case should be, the judgment should be overturned and remanded to the trial court. All right. Thank you. All right. We'll hear from Ms. Johnson and Mr. Margo. May it please the Court? The key issue is whether Mrs. Peterson's testimony as to when she had knowledge of, when she had actual knowledge that her filter had caused her injuries, created a question of material fact on the prescription issue. And the district court correctly granted summary judgment to Bard because the undisputed evidence does make clear that by July 31st of 2012, the Petersons had either actual or constructive notice of the facts that underlined their claims. Not just that she was injured, but that the cause of the injury, the facts underlying the claim that she brought. And the discovery rule states that the prescriptive period begins to run on the date that the plaintiff discovers or should have discovered the facts upon which the cause of action is based. So on her date of discharge, July 31st of 2012, what do you say she knew or should have known? We say that she knew that she was in the hospital because of flank and back pain. She knew she had had a CT scan. The results of the CT scan are in her medical records. And her physician, Dr. Eitel, who had placed the filter in 2008, testified that he had had conversations with her about the CT scan, which he specifically remembered because he had been her doctor for so long. And this was the first pierced IVC that he'd ever seen. This was the first case he'd had where a filter pierced someone's vena cava. She also knew that she had signed a consent form agreeing to have an inferior vena cava gram. She testified that she doesn't remember having the test, but she admits that that was her signature on the form. She denies that she spoke with Dr. DeCourt, who performed the test. But Dr. DeCourt testified that he has a specific memory not only of doing the test, but of discussing the results with her. He said he certainly did that. She had noticed that she had been in the hospital for five days. When she was discharged, she knew that discussions were had with her about what kind of treatment they should pursue. And she knew that the recommendation that she accepted was conservative treatment, not to have surgery to take out the IVC filter. And so, knowing all of that, in addition, Mrs. Peterson's husband testified that he was with her when they had conversations with physicians about the IVC filter and the problems with it and what to do about it. All right, but more specifically, Dr. Attell was her treating physician, I guess. Is that right? He's a heart surgeon, heart doctor. And so he was the one who planted the filter in 2008 and had treated her for years. And in 2012, treated her in the hospital. All right, so when she's discharged, I mean, ordinarily when you're discharged, you know, they don't just kick you out the door. I mean, you're being discharged and, you know, you've got follow-up, etc., etc. So I'm asking, other than the act of discharge, is there some conversation with Dr. Attell or somebody else that you are focusing on to say that, you know, when she's discharged, Dr. Attell sat at the end of the bed and said X, Y, and Z, she knew, etc. Or are you relating back to what happened in 2008 and the series of to say that by discharge, she had this cumulative information? I'm just not clear on what you're saying. You follow my question? I do. Dr. Attell treated her not just in 2008, but during her hospitalization in 2012, and that evidence is cited in our brief, that he had conversations with her about her filter that had perforated her inferior vena cava. He talked with her about that. He talked with her about the CT scan, the results of the CT scan that she had the first day she went to the hospital that resulted in her being admitted. Did he tell her that it was a barred filter? He didn't, but Dr. Attell knew that because he had placed the filter in 2008, and the medical records in the record show that on July 28th, Dr. DeCourt talks about it being a barred filter, and that's in the record excerpts. He talks about it? In his medical record, that it is a barred G2 filter. He told her? The record doesn't show that he told her, but because she had the filter placed in 2008, she always had the ability to know the manufacturer of the filter. When you're a patient in a hospital and you're having all that, why are you focusing on the procedure and the manufacturer and all that kind of stuff? In the grand scheme of things, you're trying to get better, you've got issues, you're hearing the doctor, etc., but really the patient is focusing on tell me the name of that filter again? Well, Your Honor, that's why plaintiffs have a whole year, as Judge Jones said, to bring the claim. The beginning of the prescriptive period is when she has notice or constructive notice. Well, I understand. I'm just trying to get to the point of when it is sort of like I asked Counsel Opps, the famous Howard Baker with Watergate. What did she know and when did she know it? And so I hear you telling about Dr. Attell, 08, etc., as relates to you have a barred 2 filter, when is it you say she knew or should have known that's what she had related to the discharge date? Do you follow me? She admits that she knew she had a barred G2 filter once she ordered her medical records after she had talked to her physicians. That's when she says that she knew the identity of the defendant that it was a barred filter. But the specific defendant rule doesn't apply that way. It's never been applied that way in Louisiana. Under specific defendant rule the cases involve multiple possible defendants, multiple possible causes of injury. And there is not a case in which the specific identity of the manufacturer of the product has to be known in order to start the running of the prescriptive period. The reason for that is that the prescriptive period has to have some finality. It is construed strictly but so are the exceptions. Contra non-valentum is a common law exception to the statute and the cases decided by the 5th Circuit hold that that is strictly construed in order to give effect to the one year prescriptive period. The district court cited the Jordan case and the Jordan case was the case where the plaintiff's house flooded twice and their prescriptive period didn't begin to run at the first flood because they didn't have knowledge at that point what the cause of the flooding was. When the house flooded a second time, that's when the prescriptive period began to run because at that point they saw the water come in through the floorboards and so they knew. That was when their duty to inquire further began. In Guidry v. Aventis, and this is a products case, the plaintiff was taking several different arthritis medicines and she got sick in November of 2001. At that point, her doctor took her off the Arava and said it's possible this is causing your symptoms. It wasn't until June of 2002 that her husband read an article on the internet that said that there was a connection between the symptoms. The court held that the prescriptive period began to run in November of 2001 and not June of 2002 because the only reasonable inference was that she became aware of the connection between Arava and her condition in November of 2001 at the first time when she spoke with her doctor, not in June 2002 when her husband read the article on the internet. The Chevron case is another case where the circuit has held that the prescriptive period begins to run when the injured party discovers or should have discovered the facts upon which the cause of action is based. In the Chevron, again, there were three potential causes of bolt failure and it wasn't until Chevron did an investigation and discovered which of the three potential causes by three potential defendants was the one that actually caused the problem and the prescriptive period began to run then. Let me just clarify you are not resting on the proposition simply that she was equivocal, said I don't remember. You are resting on the proposition that even if she denied, she should have known. Is that right? And you agree with them that the evidence would suggest that she did deny at some point. The evidence does suggest that at one point in her deposition she denied it. The other evidence suggests that she didn't remember including the evidence relating to the Vena Cabogram that she doesn't even remember having. So I think taken as a whole the only reasonable inference is that she did know but the court doesn't have to reach that issue because the constructive notice issue is dispositive. Right. Now as far as the specific defendant rule again that is not a rule that's been applied the way that the plaintiff suggests it should be. And the reason for that is as plaintiff's counsel has stated here when asked when did the prescriptive period begin to run? When did she know it was a barbed filter? In the brief they say well she had actual notice that her filter had been pierced on August 14th because that's when she went back to see her doctors. But it wasn't until some point after that that she got her medical records. And when she got her medical records only then did the prescriptive period begin to run. And so that were the rule. Then we'd never know when the prescriptive period began to run because that's entirely in the control of the plaintiff and her attorneys as to when they get her medical records. And that's a useful rule for some. Well that and your honor respectfully that's why it's not the rule. The prescriptive period is what it is and that's the way that the Louisiana courts have interpreted it for many years. Are there additional questions? I think we got it. Alright thank you your honor. Mr. Martin. Good afternoon. I think we're in the afternoon. I want to first address the question of whether or not a plaintiff in each party must know the particular manufacturer in a product liability case and the suggestion that the name of the manufacturer under prescription must not be known. And that goes back to the Chevron case just cited by both parties. And if I could please turn my attention to page 843 in the Chevron case where it's suggested otherwise. Defendant fails to appreciate that the evidence does not show that Cook, that's the plaintiff, knew against whom he had that cause of action. Or does defendant ever assert that Cook, the plaintiff, had actual knowledge that the defendant was the party responsible for his injury before 2012? I think that law is clear as it can be with that recitation or with that particular Every plaintiff's lawyer who  lawyer's office sometime during the one year period and the plaintiff's lawyer can wait until six months beyond the one year period before identifying the precise manufacturer. That's your argument. It's and to sort of suggest the same thing that Mr. Arvin suggested it's not just my argument it's the Supreme Court of Louisiana's statement I know they say specific defendant but in terms of should have known should have known the specific defendant I mean you're turning the idea of diligence into a hash it seems to me. It's the time that they knew or should have known that the year starts so I would harken back to something that was discussed earlier in my learning counsel's argument and that was here's a person who's in the hospital if you look at the records one of the records said that she had a Greenfield filter not a Bard filter so there's some evidence that if she had been told if they had looked at one of the records in the hospital they would have told her, could have told her that it was a different manufacturer. I'm not suggesting what the general rule should be. I am suggesting that in this case the woman is being tended by her personal doctor who implanted several years earlier and therefore it is peculiarly hard to credit that she couldn't have reasonably found the manufacturer of that device within the one year period. I'm not saying that she couldn't have reasonably found the manufacturer of the device within one year but I'm saying that that's yes but I think clearly that's not her responsibility her responsibility is to file suit within one year of the time that she did discover it. If the court were to believe that she should have discovered it or if that were uncontroverted that she knew during that time period or had reason to know during that time period who the manufacturer was while she's in the hospital but none of the doctors say that they told her who the manufacturer was. She's recovering from whatever she was going through at that point in time the flank pain. I also want to say that your honors that the other thing that's missing and Mr. Arvin pointed it out but I want to participate in bringing it out again that she must also know that there's a cause of action. You know a perforated filter and I think there would be no dispute about it. Bard will say to this day that a perforated vena cava is not the only problem with their filter. A perforated vena cava. Even if she was told she had a perforated vena cava if that were the case and she said it's not then that doesn't mean that she at that point in time knew that there was a fault with the manufacturer or that it was faulty equipment. And so that would respectfully be our other argument your honor that ought to be brought to the courts attention. So you're saying that if this case were to go to the jury it goes to the jury on what question? It goes to well we would have a jury question with respect to prescription. Yes sir. Whether she knew or she should have known of the that a cause of action existed against Bard and what that date was that she knew or should have known. On what date did she know or should have known that Bard Certainly. Her testimony is Yes your honor. Her testimony That's all I need to know. I can't give you the specific date and I apologize your honor but it's the date that she went and actually got her medical records and that was well within a year of the date that we filed suit. Okay. Thank you your honor. Does she have to know that the Bard filter is defective? I'm sorry your honor? Does she have to know that the or have reason to know that the Bard filter is defective? I would suggest that she didn't probably have knowledge that the Bard filter was defective until she at least the time that she got the records and knew that there was the manufacturer. However, I could suggest to the court that there would be a circumstance where if she had at least heard that a filter could be problematic or that filters were defective or that the Bard filters were defective specifically when they perforate. If there had been evidence of that then at that point she might have had that part of the puzzle checkmarked. But certainly not when she was back in the hospital recovering from end of July of 2012. Thank you. Thank you counsel for both sides for your briefing and argument. This concludes the oral argument panel for us this week. The oral argument cases along with the non argued cases will be taken under submission and with that we stand adjourned.